# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| KIM MILLBROOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:10-CV-245-WTL-WGH |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## Entry Granting Motion for Summary Judgment

Kim Millbrook an inmate in the custody of the Federal Bureau of Prisons ("BOP") who was formerly confined at the United States Penitentiary at Terre Haute, Indiana ("USP"). Millbrook alleges that on January 6, 2009, he was attacked and stabbed repeatedly by inmate Davon Golden. The United States is sued by Millbrook to obtain compensation for this injury. The United States seeks resolution of Millbrook's claim through the entry of summary judgment.

Whereupon the court, having read and examined the pleadings, having considered the United States' motion for summary judgment and all responses thereto with the evidentiary record, and being duly advised, finds that the motion for summary judgment [29] must be **granted**. This conclusion rests on the following facts and circumstances:

1. "Relief from misconduct by federal agents may be obtained either by a suit against the agent for a constitutional tort under the theory set forth in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971), or by a suit against the United States under the Federal Tort Claims Act [FTCA] . . . which permits claims based upon misconduct which is tortious under state law. 28 U.S.C. '' 1346(6), 2680." *Sisk v. United States,* 756 F.2d 497, 500 n.4 (7th Cir. 1985). Milbrook's claim is asserted pursuant to the FTCA. The United States is the proper defendant in such an action. *Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008).

2. As noted, the United States has filed a motion for summary judgment. "[T]he primary purpose of summary judgment is to isolate and dispose of factually unsupported claims. . . ." *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). "As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted).

- A motion for summary judgment must be granted Aif the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no Agenuine@ dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

- At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Harris*, 127 S. Ct. at 1776 (*quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (footnote omitted).

- The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008) (citing cases). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

- To support an assertion that a fact cannot be, or is genuinely disputed, a party must (a) cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials, (b) show that the materials cited do not establish the absence or presence of a genuine dispute, or (c) show that

an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) and (B). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. Fed. R. Civ. P. 56(e).

3. In acting on a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996). The substantive law applicable to the United States' motion for summary judgment is this:

- The FTCA waives the Government's sovereign immunity only "under circumstances where . . . a private person . . . would be liable" under applicable state tort law. 28 U.S.C. § 1346(b)(1). *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1297 (7th Cir. 1991) ("[T]he FTCA incorporates the substantive law of the state where the tortious act or omission occurred. . . .").

- The underlying tort associated with Millbrook's claim is the tort of negligence as recognized in Indiana law. Thus, Millbrook is required to satisfy Indiana tort law by proving by a preponderance of the evidence that the United States: (1) owed a duty to the plaintiff Millbrook; (2) breached that duty by failing to meet the appropriate standard of care; and (3) Millbrook suffered injury as the proximate result of the United States' failure to perform its duty. See *Parrott v. U.S.*, 536 F.3d 629, 635 (7th Cir. 2008); *Kincade v. MAC Corporation*, 773 N.E. 2d 909, 911 (Ind.Ct.App. 2002); *Iglesias v. Wells*, 441 N.E.2d 1017, 1019 (Ind.App.Ct. 1982).

- The United States owed a duty to Millbrook pursuant to 18 U.S.C. § 4042. *See United States v. Muniz*, 374 U.S. 150, 164-65 (1963) (holding that "the duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042"). This statute provides in pertinent part that the BOP "shall . . . (2) provide suitable quarters and provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise" and further shall "(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)-(3).

4. The first element of an action for negligence in Indiana is established by virtue of Millbrook's custody at the time of the incident. The facts material to the remaining elements, construed in the manner most favorable to Millbrook as the non-movant, are the following:

a. Devon Golden was also an inmate incarcerated at the USP at the time of the incident. The court reviewed *in camera* Golden's Sentry Inmate Discipline Data. That data shows that Golden received seven disciplinary incident reports during his incarceration at the USP and received five incident reports since his transfer to a different BOP facility. Prior to January 6, 2009, Golden was sanctioned for 1) possession of a weapon or sharpened instrument and fighting with another person on September 3, 2008, 2) refusing to obey an order and being insolent to staff member on June 19, 2007, 3) possessing a dangerous weapon on May 6, 2007, 4) assaulting an inmate on November 15, 2006, 5) threatening and disobeying a direct order on November 1, 2006, and 6) assaulting an inmate on August 19, 2006.

b. Diane Quinones is (and at all times relevant to this action was) the Supervisor of Education at the USP. Carlos Delgado, Steven Markel, and Billie Kelsheimer were, at all times relevant to the complaint, employed as teachers at the USP. Katherine Hackett is (and was at all times relevant to the complaint) an Education Specialist employed at the USP.

c. On Tuesday, January 6, 2009, at approximately 10:20 a.m., Education Specialist Hackett advised via radio that a fight had broken out in the Education Department. At the time of Hackett's alert, Quinones, Delgado, Markle and Kelsheimer were in the USP law library. Each of these individuals responded to the alert by proceeding directly to the Education Department, where they observed a fight in progress between two inmates later identified as Golden and Millbrook. Delgado, Markle and Quinones ordered the fighting inmates to desist and, at that time, observed that inmate Golden had a sharpened weapon in his hand. Quinones at that time attempted to take control of Millbrook but was unable to do so due to the weapon wielded by Golden. The weapon then dropped to the floor and prison staff broke up the fight and gained control over the combatants.

d. Markle and Quinones took control of inmate Golden, placing him against a wall and applying hand restraints to him. Quinones then directed Markle and other staff to place the other inmates who were at the scene into classrooms where those inmates could be secured. Once that was accomplished, Markle escorted Golden to the Red Corridor, where a pat down search was conducted. Golden was then escorted through secure corridors to

a lieutenant's office. At the lieutenant's office a more thorough search of Golden was conducted, but no contraband was found on his person.

e.  Millbrook was escorted from the Education Department by Delgado, who first took him to the Red Corridor. Millbrook was then transported to the Urgent Care Room of the USP's Health Services. Millbrook's injuries included two lacerations to the top of his head, a laceration to the left side of his nose extending to his lower left eye lid, and a puncture wound to his upper chest area. Millbrook was stabilized at the Urgent Care Room and was then transported to a local hospital for further examination and treatment.

f.  As the result of the altercation between inmates Golden and Millbrook, an investigation was conducted by the BOP. As a part of that investigation, a video of the incident was recovered. That video is among the evidentiary materials relied on by the United States in seeking the entry of summary judgment. The video shows Millbrook and Golden having a conversation in a hallway at approximately 10:19 a.m. This conversation escalates into an altercation in which Millbrook is clearly seen initiating the fight by striking Golden with his fists in the head and upper torso area. The offenders wrestle and seconds later, at approximately 10:21 a.m., Golden breaks free from Millbrook and runs away from him down the hallway. As he is running from Millbrook, Golden can be seen reaching into his trousers for something. Golden disappears from camera view for a moment, but returns into view charging toward Millbrook. Millbrook then retreats from Golden, and Golden is observed striking at Millbrook with a stabbing motion.

g.  The time stamp on the video tape reflects that Millbrook was first stabbed at 10:21:14 a.m. By 10:21:22 a.m., USP staff arrives at the scene, and by 10:21:34 a.m. the fight is broken up. The entire occurrence lasts less than three minutes.

h.  Prior to the January 6, 2009, incident between inmates, Golden and Millbrook, those two inmates were not known by BOP personnel to pose any specific risk to one another and were not on separation status from one another. Further, BOP records do not reflect that either inmate had advised or alerted BOP staff of any concerns regarding one another. BOP records do not reflect any prior altercations between inmates Golden and Millbrook. In addition, Quinones, Markle, Delgado each testified that they were not aware of negative issues between inmates Golden and Millbrook before the fight.

5.  The second and third elements of Millbrook's claim of negligence are whether the BOP breached its duty by failing to meet the appropriate standard of care and whether Millbrook suffered injury as the proximate result of the United States' failure to perform its duty. The real focus as to these elements, of course, is

the second—whether there was a breach of the duty of care. In understanding the BOP's duty, it must be remembered that "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more [violence]." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008); *see also United States v. Tokash*, 282 F.3d 962, 970 (7th Cir. 2002) ("[P]risons are inherently dangerous places and are inhabited by violent people . . . .").

> a. While Section 4042 establishes the standard of care owed to prisoners by the BOP, the Bureau "is not an insurer of the safety of all inmates." *Flechsig v. United States*, 786 F. Supp. 646, 650 (E.D.Ky. 1991), aff'd., 991 F.2d 300 (6th Cir. 1993). "The duty under § 4042 is not absolute; generally it depends on the reasonableness under the circumstances." *Id.*
>
> b. As to whether the United States breached its duty to Millbrook, the Seventh Circuit has held that in cases such as this the plaintiff "must show only that BOP staff knew or reasonably should have known of a potential problem between the two inmates." *Parrott*, 536 F.3d at 637 (citing *Brown v. United States*, 486 F.2d 284, 288-89 (8th Cir. 1973) (analyzing United States' liability under the FTCA, in a federal prisoner's failure-to-protect suit, in terms of what "the federal government knew or reasonably should have known"); Restatement (2d) of Torts § 314A cmt. e).

6. Millbrook argues that the United States breached its duty to him by failing to anticipate that he would be attacked by inmate Golden and by failing to protect him from such an attack. Millbrook attempts to raise four factual disputes to compel the denial of the motion for summary judgment. For the reasons explained below, this effort is unpersuasive.

> a. Millbrook asserts that he notified staff officials of threats by inmate Golden immediately prior to the stabbing. Millbrook states under the penalty of perjury that before he was attacked he told Markle, Delgado, and Quinones that Golden had threatened to kill him for being a snitch and sitting in Golden's chair inside the classroom. Millbrook explained that he needed to be separated from this violent inmate out of fear for his health and safety. These officials told Milbrook to go back to class. As a result, Milbrook went out into the hallway where inmate Golden was waiting for him and began stabbing him.
>
> b. Millbrook's version of events is so utterly discredited by the video record of the incident that no reasonable jury could believe his version of what occurred. In this instance, the court must rely on the facts in the light depicted by the videotape. *See Harris*, 127 S. Ct. at 1776. The videotape directly conflicts with Millbrook's testimony. The video shows Milbrook (not

Golden) waiting in the hall. Further, Milbrook and Golden are seen to be talking and during this time a correctional staff member walks past and Millbrook can be seen smiling in her direction. Millbrook's demeanor directly prior to Millbrook striking Golden and initiating the attack is not consistent with someone who fears for his safety and is seeking protection from correctional staff. On the contrary, the videotape is not only consistent with the testimony of Markle, Delgado, and Quiones that they were not aware of negative issues between inmates Golden and Millbrook before the fight, but conclusively establishes Millbrook's demeanor in conversation with Golden before Millbrook began the assault.

c.   Millbrook also asserts that staff officials came out of the office and stood back and did nothing to help Milbrook. Millbrook argues that Delgado told staff to get back so that Golden could continue his attack on Milbrook. Again, the videotape discredits Millbrook's account. No reasonable juror could conclude that BOP staff did not respond as quickly as humanly possible to the fight. The video tape reflects that less than thirty seconds passed between the time Millbrook was stabbed, Golden was disarmed, and both men were restrained. The BOP staff's response to the fight was quick, efficient and in all ways professional.

d.   Millbrook asserts that because Golden had a history of violence, had previously attacked other inmates, and had been previously found in possession of contraband weapons prior to the January 6, 2009, incident, the United States was on notice that Golden posed a particular risk to Millbrook. In response to his assertion, the court completed an *in camera* review of Golden's Sentry Inmate Discipline Data and disciplinary incident reports. From that review, the court finds that no reasonable juror could conclude that Golden's past conduct put the United States on notice that Golden posed a particular risk to Millbrook. Golden received six incident reports between August 2006 and January 6, 2009 (when the attack occurred). Two of these conduct reports were for assaulting another inmate, but there is no apparent connection between these assaults and the assault on Millbrook.

e.   Millbrook argues that he submitted a form on January 22, 2009, in case no TRT-NCR-2010-01849 informing staff officials that Golden threatened Millbrook. Even if such a form was submitted, it is irrelevant because it was submitted after the January 6, 2009, incident. Any forms submitted after the date of the fight would not be sufficient to permit prison staff notice sufficient to stop a fight which had already occurred.

7.   The United States correctly argues that the undisputed facts demonstrate no breach of duty by the United States to Millbrook with respect to the occurrence of January 6, 2009. Prisons are inherently dangerous places populated

by dangerous and violent people (such as Golden and Millbrook). The undisputed facts establish that the United States had no reason to believe that Golden posed a particular and specific threat to Millbrook. *See Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Absent cause or reason to believe that Golden posed a specific or particular risk to Millbrook, the United States had no duty to take specific steps to protect Millbrook from Golden.

8. In addition to not having breached any duty owed by the United States to Millbrook, the evidence establishes that Millbrook was the aggressor in the altercation between Millbrook and Golden. The proximate cause of Millbrook's injuries was Millbrook's ill-advised decision to attack inmate Golden, who turned out to be armed and disposed to protect himself. The evidence also establishes that USP personnel responded promptly to the altercation, separated the combatants as soon as practical, and provided Millbrook with prompt and appropriate medical attention.

9. "'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)). As explained herein, Millbrook has not come forward with evidence that there is a genuine issue of material fact for trial. Specifically, Millbrook cannot establish either the breach of any duty owed to him by the United States with respect to the occurrence at issue or that the proximate cause of the incident was the result of acts or omissions by the staff at the USP. Accordingly, the United States' motion for summary judgment [29] is **granted**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 03/23/2012

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana